Harper, J.
It is said by Atterly in' his Treatise on Marriage Settlements, that “ articles being often carelessly drawn, settlements in pursuance of them must not always be made in the very words of the articles, nor even according to their legal import and operation ; for if that was the case, they would often be of little avail. But they must be made in conformity with the intention of the parties, or at least as near to it as is consistent with the rules and principles of law. In short, in framing settlements in pursuance of articles, the articles must be considered merely in the light of instructions.” In the case *of Randall v. Willis, to which he refers, where, by articles before marriage, the husband had agreed to settle all his personal estate, of what kind or nature soever; this was held to include only the personal estate he should have at the time of his death, giving him the power to dispose of his personal estate, in good faith, during his life. The Chancellor says, “ If a formal deed was executed before marriage, containing such a covenant, it is impossible I could do any thing with it. But an article is only the head and minute of an agreement, not to be followed literally.” Here the plain and literal import of the terms which related to the personal estate he possessed at the time of signing the articles, was departed from, on account of the unreasonableness of making “ every chair and stool, the provisions in the house, &c., the subject of settlement.” It is evident that much greater latitude is allowed in executing marriage articles, and adapting their provisions to the exigencies of a family, than in construing wills and other instruments. If a settlement were executed in the words of the articles we are considering, the effect would be to give the wife an estate, for the life of her husband, in the whole of the property, with a vested remainder to herself in one moiety, which, although she might die in the lifetime of her husband, would be transmitted to her legal representatives. But many absurd and unreasonable consequences would follow such a clisppsition which we cannot suppose the party to have intended. It is admitted that the whole of the property included in the articles, was the property of the husband, and constituted his whole estate. Under a settlement thus executed, in the event which has happened of the wife’s dying first, the wife’s estate per auter vie and her moiety in remainder, would be distributable on her death, her husband taking one-third of the the life estate, and a sixth of the whole estate in remainder, and the complainant taking one moiety in remainder by purchase under the settlement, and two-thirds of his mother’s interest, by transmission from her. It is unreasonable to suppose that a man could have intended to leave himself such *scanty provision out of his own property. If the wife however, had died childless, leaving her husband surviving, then two *76 thirds of her life estate, and two-thirds of her moiety, or one-third of the whole estate, in remainder, would hare gone to her next of kin, strangers to the husband. It is not be supposed that a man intends thus to give his property to strangers during his lifetime. The words of the articles are “ that the property is to remain her’s during my natural life, and at my death to be equally divided between her and all the children issuing from the said marriage.” Though these words, if used in a settlement, would have given the wife a vested remainder, yet this is by giving them a technical and artificial sense. To the popular understanding when it is said “the property shall be her’s during my natural life,” there will be implied some idea of her living during his lifetime to enjoy it, and when it is given to her at his death, some condition of her being alive to take it. In the natural and popular sense, a gift to her, imports a benefit to herself, which she is personally to enjoy. At all events, the words are capable of such a meaning, and certainly it is the more reasonable and probable one. The general objects of a marriage settlement, are a provision for the wife for her life, and for the issue of the marriage. These are effected by the construction I have given the articles.
It was suggested that the word her’s, was inserted by mistake, and that the provision really intended, was that “the property is to remain mine during my life.” This may be, but there is no evidence of it. If it was to remain her’s, I suppose the husband expected to have the enjoyment of the income. If the construction I have given the articles be correct, then the provision for the wife was, that the whole of the property should be her’s during the joint lives of herself and her husband, and if she should survive him, a moiety to her absolutely, without any disposition of that portion in the event of his surviving her. The property having been the husband’s, every thing that was not disposed of remained his, and having survived his wife, the moiety given to her in remainder, *on contingency, became absolutely his, and is disposed of by the will. The complainant is therefore entitled only to the moiety of the property secured by the articles, and. to an account of the rents and profits, from the time of his father’s death.
It is therefore ordered and decreed, that the decree of the Chancellor be modified according to the views herein expressed.
Johnson and O’Neall, Js., concurred.